| | |
|---|---|
| TROY HERRING ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:12-CV-2705-RMG |
| vs. ) | |
| ) | |
| LAPOLLA INDUSTRIES, INC. ) | **ORDER** |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| _____ ) | |

This matter comes before the Court on Plaintiff's motion under Federal Rule of Civil Procedure 12(c), requesting that this Court enter judgment in favor of Plaintiff based solely on the pleadings. (Dkt. No. 28.) For the reasons set forth below, the Court GRANTS in part Plaintiff's motion and declares that the non-compete provision of the Employment Agreement is void as a matter of law and unenforceable. Accordingly, all of Defendant's counterclaims arising out of the non-compete provision are dismissed with prejudice. However, the Court DENIES Plaintiff's motion to the extent it sought judgment on Defendant's counterclaims arising out of the non-disclosure provision of the Employment Agreement.

### I. Legal Standard

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions operate to "dispose of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further." *Lewis v. Excel Mech., LLC*, 2:13-CV-281-PMD, 2013 WL 4585873 at * 1 (D.S.C. Aug.

28, 2013) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1368 (3d ed. 2010)). A judgment on the pleadings is only warranted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* at * 2 (quoting *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)).

Rule 12(c) motions limit the courts review to the pleadings, *Abell Co. v. Baltimore Typographical Union No. 12*, 338 F.2d 190, 193 (4th Cir. 1964), and "any documents and exhibits attached to and incorporated into the pleadings." *Lewis*, 2013 WL 4585873 at * 1 (citing *Eagle Nation, Inc. v. Mkt. Force, Inc.*, 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001)). Like motions filed under Rule 12(b)(6), motions pursuant to Rule 12(c) call for the pleadings to be construed in the light most favorable to the non-moving party. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir.2002). Accordingly, "[t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." *Lewis*, 2013 WL 4585873, at * 2 (quoting *John S. Clark Co., Inc. v. United Nat'l. Ins. Co.*, 304 F. Supp. 2d 758, 763 (M.D.N.C. 2004)).

## II. Statement of Facts

LaPolla Industries ("LaPolla") supplies spray polyurethane foam ("SPF") insulation and equipment. (Compl. ¶ 2, Dkt. No. 1; Answer ¶ 2, Dkt. No. 9). On July 1, 2008 LaPolla entered into an Asset Purchase Agreement with AirTight Corporation ("AirTight"). (Compl. ¶ 5, Answer ¶ 5). At the time of the Asset Purchase Agreement, Plaintiff Troy Herring ("Herring") was employed by AirTight as "National Sales Manager." (Compl. ¶ 4; Answer ¶ 4). As a part of his continued employment, Herring signed the Employment Agreement that is at issue with LaPolla.

(Compl. ¶ 6; Answer ¶ 6). Under the Employment Agreement, Herring was hired in the "position of National Sales Manager and shall have the duties and responsibilities usually associated with such capacity." (Dkt. No. 1-1 at ¶ 2.) The Employment Agreement contained confidentiality, non-compete, and non-solicitation provisions. (*See id.* at ¶¶ 5.1, 5.2.) In pertinent part, the non-compete provision reads as follows:

> During the Employment Period and for a period of two (2) years after the termination of Employee's employment with Company...the Employee shall not, either directly or indirectly, for himself or any third party, anywhere within North America: (a) engage in or have any interest in any activity that directly or indirectly competes with the business of the Company or of any of its affiliates...including without limitation, accepting employment from or providing consulting services to any such competitor, owning any interest in or being a partner, shareholder or owner of any such competitor, (b) solicit, induce, recruit, or cause another person in the employ of the Company or its affiliates or who is a consultant or independent contractor for the Company or its affiliates to terminate his employment, engagement or other relationship with the Company or its affiliates, or (c) solicit or accept business from any individual or entity which shall have obtained the goods or services of, or purchased goods or services from, the Company or its affiliates during the two year period immediately prior to the end of the Employment Period or which otherwise competes with or engages in a business which is competitive with or similar to the business of the Company or any of its affiliates, (d) call on, solicit or accept any business from any of the actual or targeted prospective customers of the Company or its affiliates...

*Id.*

The Employment Agreement indicates that it was signed on June 30, 2008, became effective July 1, 2008, and was to terminate on June 30, 2011. (*See id.* ¶ 1.) The Employment Agreement also contained a "Governing Law" provision, requiring the agreement to be governed by the laws of Texas, and establishing Harris County, Texas as the appropriate venue for any action arising out of the agreement. (*Id.* ¶ 8.)

In April 2012, Herring voluntarily resigned from his position as "Product Manager" at LaPolla. (Compl. ¶ 18; Answer ¶ 18). Subsequently, LaPolla sent Herring a cease and desist letter, putting Herring on notice that he was still bound by the terms and conditions of the Employment Agreement. (Compl. ¶ 20; Answer ¶ 20.) On September 19, 2012, Herring filed this action seeking a declaratory judgment that the Employment Agreement is void as a matter of law. (Dkt. No. 1.) LaPolla then counterclaimed for breach of contract, alleging that Herring breached the non-compete and non-disclosure provisions of the Employment Agreement, and breached his duties of good faith and fair dealing to LaPolla. (Answer ¶ 39.)

### III. Discussion

As written, the non-compete provision is unenforceable under Texas and South Carolina law.

### A. Texas Law

> Texas courts generally require some geographic limitation in a valid covenant not to compete. *See, e.g., Goodin v. Jolliff*, 257 S.W.3d 341, 352 (Tex. App.–Fort Worth 2008, no pet.) (citing cases); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 660-61 (Tex. App.–Dallas 1992, no pet.). "A reasonable geographic scope is generally considered to be the territory in which the employee worked for the employer." *TransPerfect Translations, Inc.*, 594 F. Supp. 2d at 754 (citing *Harthcock*, 824 S.W.2d at 660); *see also, Cobb v. Caye Publ'g Grp., Inc.*, 322 S.W.3d 780, 783–84 (Tex. App.–Fort Worth 2010, no pet.) ("Generally, a reasonable area for purposes of a covenant not to compete is considered to be the territory in which the employee worked while in the employment of [her] employer."). "[N]on-compete covenants with restrictions covering a wide geographic area may be reasonable if they are limited in scope to a firm's current or prospective clients such that they do not pose a greater restraint than necessary to protect the firm's goodwill." *TransPerfect Translations, Inc.*, 594 F. Supp. 2d at 754 (citing cases).

(Def. Br., Dkt. No. 39 at 14-15.) Here, the non-compete restricts Herring's business activities "anywhere within North America." (Dkt. No. 1-1 ¶ 5.1.) Yet, the employment contract at issue,

-4-

which limits Herring's activities in the entirety of North America, also states that he "shall hold the position of *National* Sales Manager and shall have the duties and responsibilities usually associated with such capacity." (Dkt. No. 1-1 ¶ 2 (emphasis added).) Thus, just from the face of the contract at issue, the scope of the non-compete is larger than the "territory in which the employee worked for the employer." Nor does the non-compete provision limit its scope to LaPolla's "current or prospective clients" such that it might be reasonable under Texas law even with such a wide geographic scope. (*See id.* at ¶ 5.1.) Thus, the non-compete provision is unenforceable under Texas law. *See TransPerfect Translations, Inc.*, 594 F. Supp. 2d at 754.

## B. South Carolina Law

Under South Carolina law, "[a] geographic restriction is generally reasonable if the area covered by the restraint is limited to the territory in which the employee was able, during the term of his employment, to establish contact with his employer's customers." *Team IA, Inc. v. Lucas*, 717 S.E.2d 103, 107 (S.C. Ct. App. 2011) (quoting *Rental Uniform Serv. of Florence, Inc. v. Dudley*, 301 S.E.2d 142, 143 (S.C. 1983)). Again, while this area might be smaller, the largest area that Herring, as a National Sales Director, would have been able to establish contact with LaPolla's customers, is the nation, not the entirety of North America. Thus, the geographic scope of the non-compete provision is overbroad on its face, and not enforceable under South Carolina law. *See id.* (non-compete will not be upheld unless it is "reasonably limited in its operation with respect to time and place").

## C. Availability of "Blue Penciling" the Agreement

LaPolla argues that even if the non-compete provision is overbroad as written, Texas courts rewrite or "blue pencil" overbroad agreements to make them reasonable, and this Court should apply Texas law to do the same. (Dkt. No. 39 at 17.)

Generally, South Carolina courts honor choice of law provisions that are set forth in contractual agreements. *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 728 (D.S.C. 2007). However, choice of law provisions "will not be enforced if application of foreign law results in a violation of South Carolina public policy." *Id.* (citing *Standard Register Co. v. Kerrigan*,119 S.E.2d 533, 541-42 (S.C. 1961)). Thus, before applying Texas' rule of blue penciling contracts, "the court must first consider whether this rule violates South Carolina public policy." *Id.*

The South Carolina Supreme Court has held that "the very act of adding a term not negotiated and agreed upon by the parties violates public policy." *Stonhard, Inc. v. Carolina Flooring Specialists, Inc.*, 621 S.E.2d 352, 354 (S.C. 2005). In a later case, the South Carolina Supreme Court held that this language in *Stonhard* and the court's decision in *Faces Boutique, Ltd. v. Gibbs*, 455 S.E.2d. 707 (S.C. Ct. App. 2003) "stand for the proposition that, in South Carolina, the restrictions in a non-compete provision cannot be rewritten by a court." *Poynter Invs., Inc. v. Century Builders of Piedmont, Inc.*, 694 S.E.2d 15, 18 (S.C. 2010). The very definition of "blue penciling" a contract is to add or subtract terms not agreed to by the parties. *See Lucas*, 717 S.E.2d at 107 ("[A] court may not 'blue pencil' the restrictions contained in a non-competition provision by inserting or subtracting terms not agreed to by the parties in order to make it valid and enforceable."). And the South Carolina Supreme Court has explicitly held that act of adding and subtracting terms not negotiated and agreed upon by the parties violates

public policy. *Stonhard*, 621 S.E.2d at 354. Thus, the Court will not blue-pencil the non-compete agreement to make it enforceable, as doing so would violate South Carolina public policy.

LaPolla points out that in *Stonhard*, the South Carolina Supreme Court considered the result of applying New Jersey "blue penciling" law and found that contract could not be reformed under New Jersey law. (Dkt. No. 44 at 6-7.) LaPolla is correct. The *Stonhard* court found the contract could not be reformed under New Jersey law. 621 S.E.2d at 354. But the *Stonhard* court did not end its analysis here. It went on to hold that *"[e]ven if the agreement could be reformed in this manner under New Jersey law*, the agreement would be unenforceable in South Carolina because the very act of adding a term not negotiated and agreed upon by the parties violates public policy." *Id.* at 354 (emphasis added). In an earlier part of its opinion, the *Stonhard* court stated "we hold that the covenant, *despite any reformation*, is void and unenforceable as a matter of public policy" because "[t]o add and enforce such a term requires this Court to bind these parties to a term that does not reflect the parties' original intention." *Id.* (emphasis added). This Court reads *Stonhard*, along with the South Carolina Supreme Court's decision in *Poynter*, to hold that blue penciling non-compete agreements and enforcing them in South Carolina violates South Carolina's public policy because doing so "requires this Court to bind these parties to a term that does not reflect the parties' original intention." *Id.* Therefore, the Court will not blue-pencil the non-compete at issue here.

## IV. Remaining Claims

The Court's holding resolves Plaintiff's claims in the Complaint and Defendant's counterclaims based on the non-compete provision of the Employment Agreement. However,

while Plaintiff's motion purports to cover all of Defendant's counterclaims (Dkt. No. 28-1 at 13), the motion did not actually address Defendant's counterclaims based on the non-disclosure provision of the Employment Agreement. Thus, the Court's denies Plaintiff's motion as to these counterclaims.

### V. Conclusion

For the reasons stated above, the Court GRANTS in part Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 28).

**IT IS ORDERED THAT** the non-compete provision (¶ 5.1) of the Employment Agreement is unenforceable and void as a matter of law.

**IT IS FURTHER ORDERED THAT** all of Defendant's counterclaims arising out of the non-compete provision (¶ 5.1) of the Employment Agreement are dismissed with prejudice.

**IT IS FURTHER ORDERED THAT** Plaintiff's motion is DENIED to the extent it sought judgment on Defendant's counterclaims arising out of the non-disclosure provision of the Employment Agreement.

**AND IT IS SO ORDERED.**

_____
Richard M. Gergel
United States District Judge

October 7, 2013
Charleston, South Carolina