| | |
|---|---|
| TROY HERRING ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:12-CV-2705-RMG |
| vs. ) | |
| ) | |
| LAPOLLA INDUSTRIES, INC. ) | **ORDER** |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| _____) | |

This matter is before the court on Defendant's motion to transfer venue from the United States District Court, District of South Carolina, Charleston Division, to the United States District Court, District of Texas, Houston Division (Harris County) pursuant to 28 U.S.C. § 1404(a) and § 1406. (Dkt. No. 30). For the reasons set forth below, the Court DENIES the Defendant's motion.

## I. BACKGROUND

LaPolla Industries ("LaPolla") and Air-Tight Marketing and Distribution, Inc. ("AirTight") manufacture and supply spray polyurethane foam ("SPF") insulation and equipment. (Dkt. No. 30 at 2.) In July of 2008 LaPolla purchased AirTight. (Compl. ¶ 5; Answer ¶ 5.) As a result of the purchase, certain AirTight employees, including Plaintiff Troy Herring, became employees of LaPolla.[1] (Dkt. No. 30 at 2; Compl. ¶ 13.) Herring's employment contract with

---

[1] The parties appear to dispute whether these employment contracts were necessary to finalize the sale of AirTight to LaPolla. (*Compare* Dkt. No. 30 at 2 *with* Dkt. No. 40 at 3.)

LaPolla contained a non-compete clause. (Dkt. No. 1-1 at 1.) The term of the employment contract ended on June 30, 2011, (*id.*), and Herring continued working for LaPolla as an at-will employee after that date. In April of 2012, Herring voluntarily resigned from LaPolla. (Compl. ¶ 18; Answer ¶ 18.)

After his resignation Herring received a cease and desist letter from LaPolla accusing him of breaching the employment agreement. (Compl. ¶ 20; Answer ¶ 20.) Herring then filed this action on September 19, 2012, asking for a declaratory judgment, declaring the non-compete clause null and void and unenforceable. (*See* Compl., Dkt. No. 1.) LaPolla answered and counterclaimed for breach of the employment contract. (Answer, Dkt. No. 9.) Notably, LaPolla admitted that "that this Court has jurisdiction over [Herring's] claims and further asserts that venue is proper in the District of South Carolina, Charleston Division." (Answer ¶ 9.) However, later in its Answer, LaPolla asserted as an affirmative defense that "Plaintiff's Complaint should be dismissed and/or transferred to the proper venue and forum - Texas, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and *forum non conveniens*."[2] (*Id.* ¶ 35.) Less than a

---

[2] Objections to improper venue are waived when venue is admitted in an answer to the complaint. *E.g., Young Again Prod., Inc. v. Acord*, 459 Fed. App'x 294, 306 (4th Cir. 2011) ("[Defendant] waived her objection to venue when she admitted venue was proper in her answer to [Plaintiff's] amended complaint and thereby failed to object to venue in the district court."); *see also Leonard v. Mylan, Inc.*, 718 F. Supp. 2d 741, 744 (S.D. W.Va. 2010) ("[D]efendants waived their ability to seek § 1406(a) transfer. They filed their Answer on February 16, 2010, but did not file the Motion to Transfer until May 20, 2010."). The Court cannot find any authority for the situation where Defendant both admits venue and objects to it in the same pleading. However, Herring does not argue that LaPolla has waived its objection. (*See* Dkt. No. 40.) And, at least without LaPolla's admission earlier in the complaint, LaPolla's affirmative defense would be enough to preserve the objection. *See Broad. Co. of the Carolinas v. Flair Broad. Corp.*, 892 F.2d 372, 378 (4th Cir. 1989) (objection to venue not waived where answer contained a specific objection to venue and motion to dismiss was submitted six months after complaint was filed and while discovery was still in progress), *superseded on other grounds by statute*, 28 U.S.C. § 1391. Therefore, the Court assumes that LaPolla's objection to venue has not been waived.

week before discovery was set to expire (*see* Dkt. No. 19)³, LaPolla filed this motion to transfer venue pursuant to 28 U.S.C. § 1404(a) and § 1406.

## II. Whether 28 U.S.C. § 1406 or § 1404(a) Is Applicable

While LaPolla claims that its motion is also pursuant to § 1406, its motion only makes arguments under § 1404(a). (*See* Dkt. No. 30.) The one paragraph labeled "Section 1406" quotes §1404(a) and simply states the case should be transferred under §1406 for the same reasons as § 1404(a). (Dkt. No. 30 at 17.) However, these statutes are not interchangeable and carry different consequences, including implications for choice-of-law questions. *See Lafferty v. St. Riel*, 495 F.3d 72, 76-77 (3d. Cir. 2007) (comparing the two statutes).

The weight given to forum selection clauses may also be affected by which statute applies. In a motion to dismiss under § 1406 or Rule 12(b)(3) based on a forum-selection clause, courts apply the standards set forth in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). *See Albemarle Corp. v. AstraZeneca UK* Ltd., 628 F.3d 643, 651 (4th Cir. 2010) (applying *Bremen* standard in such a case); *see also In re Atlantic Marine Constr. Co., Inc.*, 701 F.3d 736, 740 n.21 (5th Cir. 2012) (internal quotations and citations omitted) ("Although we would prefer to apply the same *Stewart* balancing in diversity cases to motions to dismiss and motions to transfer, the other federal courts have decided otherwise and continue to apply *Bremen* to motions to dismiss based on a forum selection clause.").⁴

---

³ The Court's Scheduling Order has since been amended upon motion of the parties. (Dkt. No. 38.)

⁴ After the Supreme Court's decision in *Stewart*, explained below, it is not clear whether *Bremen* would be applied in a § 1406 motion to transfer as opposed to a motion to dismiss. However, the Court need not reach the issue, as it finds La Polla's motion is properly made under § 1404 and not § 1406.

-3-

However, when considering a § 1404 motion to transfer venue, "the *Bremen* case may prove 'instructive' in resolving the parties' dispute" but the relevant inquiry is *not* whether the forum selection clause is unenforceable under *Bremen*. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28-29 (1988); *see also McNeill v. Int'l Precious Metals Corp.*, 872 F.2d 418, 1989 WL 27443 at *2 (4th Cir. 1989) (unpublished table decision) ("Prior to *Stewart*, a valid forum-selection clause would have been presumed enforceable...Now, however, while the existence of a valid forum-selection clause continues to be a significant factor to consider in resolving a motion to transfer, other factors must also be weighed in the balance."). Thus, the Court turns to whether § 1406 or 1404 properly governs LaPolla's motion.

There is a split of authority on whether a party can file a § 1406 motion to dismiss due to a forum-selection clause or can only file a § 1404 motion to transfer venue. A number of courts, relying the Supreme Court's decision in *Stewart*, have held a forum-selection clause is considered under § 1404(a) but not grounds for a § 1406 motion to dismiss. *See Atlantic Marine*, 701 F.3d at 739-41 (5th Cir. 2012); *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 537-39 (6th Cir. 2002); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877-79 (3d. Cir. 1995). Other courts have held that *Stewart* "applied § 1404(a) because a § 1404(a) motion was before the Court" and a forum-selection clause is also grounds for a § 1406 motion to dismiss. *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 477 (2d. Cir. 2011); *accord Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 971-73 (8th Cir. 2012).

While the Fourth Circuit has not ruled on the issue explicitly, it has held that, in the context of a forum-selection clause which mandated a foreign venue, a motion to dismiss "should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue"

rather than a motion for failure to state a claim under Rule 12(b)(6). *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). However, assuming a motion to dismiss based on a *domestic* forum-selection clause is appropriate in the Fourth Circuit,[5] this conclusion does not provide guidance as to whether a motion to transfer venue under a forum-selection clause should be made under § 1404(a) or § 1406.

The Court looks to the Eleventh Circuit for guidance, as its holdings seem the most in line with Fourth Circuit precedent in this field. Like the Fourth Circuit in *Sucampo*, the Eleventh Circuit has held in the context of a forum-selection clause which mandated a foreign venue, that a motion pursuant to Rule 12(b)(3) is the proper avenue for relief. *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1289 (11th Cir. 1998). *Lipcon*, like *Sucampo*, supported its holding with the Supreme Court's decision in *Stewart*. *Lipcon*, 148 F.3d at 1289; *Sucampo*, 471 F.3d at 549-50. And in *Sucampo*, the Fourth Circuit repeatedly cited and adopted the reasoning of *Lipcon*. *Id.* Thus, the Court finds Eleventh Circuit authority on this issue persuasive.

---

[5] This is not necessarily the case. For example, the Fifth Circuit has held that:
When a forum-selection clause designates an arbitral, foreign, or state court forum, a district court does not have the option of transferring the case to the designated forum because § 1404(a) and § 1406 only allow for transfer within the federal system. Because dismissal is the only available option for the district court in those cases, dismissal is the proper remedy. By contrast, this Court has implied that dismissal is inappropriate when transfer pursuant to § 1404(a) is available, as is the case when a forum-selection clause designates a federal forum.
*Atlantic Marine*, 701 F.3d at 740.
At least one court in this circuit has held that because "the presence of a forum-selection clause does not, in and of itself, make venue improper," that motions based on a forum-selection clause should be considered under § 1404(a) and cannot be the subject of § 1406 motion to dismiss. *See AC Controls Co., Inc. v. Pomerory Computer Res., Inc.*, 284 F. Supp. 2d 357, 359-60 (W.D.N.C. 2003). However, *Pomerory* was decided before the Fourth Circuit's decision in *Sucampo*.

In *Slater v. Energy Serv. Group Int'l, Inc.*, 634 F.3d 1326 (11th Cir. 2011), the Eleventh Circuit addressed the implications of *Lipcon* in the context of a domestic forum-selection clause. There the Eleventh Circuit analyzed the Supreme Court's decision in *Stewart* and the Eleventh Circuit's decision in *Lipcon* to "conclude that § 1404(a) is the proper avenue of relief where a party seeks the transfer of a case to enforce a forum-selection clause, while Rule 12(b)(3) is the proper avenue for a party's request for dismissal based on a forum-selection clause." *Slater v. Energy Serv. Group Int'l, Inc.*, 634 F.3d 1326 (11th Cir. 2011). Thus, the Court holds in accordance with *Slater*, that § 1404(a) is the proper avenue of relief where a party seeks to transfer a case under a forum-selection clause, and § 1404(a) is the statute under which LaPolla's motion is properly made.

### III. Analysis Under 26 U.S.C. § 1404(a)

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 26 U.S.C. § 1404(a). "Decisions whether to transfer a case pursuant to 28 U.S.C. § 1404 are committed to the discretion of the transferring judge." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991). A § 1404(a) motion "calls on the district court to weigh in the balance a number of case-specific factors." *Stewart*, 487 U.S. at 29. Factors that courts consider are:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other

practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2007) (internal citations and quotations omitted); *accord Orian Rugs, Inc. v. Sears Holdings Corp.*, No. 8:13-cv-331, 2013 WL 115823 at *6 (D.S.C. Mar. 18, 2013).

The presence of a forum-selection clause is also a significant factor for the court's consideration. *Stewart*, 287 U.S. at 29. However, the relevant inquiry is not whether a forum-selection clause is unenforceable under *Bremen*. *Id.* at 28-29. This is because

Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice." It is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause.

*Id.* at 30-31. "The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration. . . nor no consideration. . .but rather the consideration for which Congress provided in § 1404(a)." *Id.* at 31. The Fourth Circuit has found a forum-selection clause dispositve only where "no other factors tip the balance under a careful § 1404(a) analysis." *Brock*, 933 F.2d at 1258.

The parties disagree as to whether the forum-selection clause here is enforceable under *Bremen* such that it can be considered a factor at all. (*Compare* Dkt. No. 30 at 6-11 *with* Dkt.

No. 40 at 7-11.) However, the Court need not reach the question as it finds that other § 1404(a) factors "tip the balance" against transfer, even if the forum-selection clause is valid.

Here, the convenience of the parties favors neither Texas nor South Carolina. "No matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away." *Brock*, 933 F.2d at 1258. From the record before the Court, it also appears that the convenience of third party witnesses favors neither state. *See Avant v. Travelers Ins. Co.*, 668 F. Supp. 509, 510 (D.S.C. 1987) (holding that defendant must establish convenience by "evidence of record on the issue of convenience other than its allegations within the memorandum attached to the motion to change venue.") LaPolla claims witnesses with knowledge of the contract are in Texas (Dkt. No. 30 at 14), but only points to its Chief Executive Officer as an example of who that might be. (Dkt. No. 30-1 at ¶ 24-25.) Similarly, Plaintiff does not point to witnesses other than himself in South Carolina. LaPolla states that it will be required to call customers to testify but does not state where these customers reside; it appears that they are likely to be found in multiple states including South Carolina and Texas. (*See* Dkt. No. 30 at 15; Dkt. No. 44 at 11 ("[W]itnesses could be located in multiple states that Plaintiff travelled [sic] to.").) The only other possible witnesses that have been identified live in Georgia, neither state under consideration, but which at least borders South Carolina. (Dkt. No. 44 at 11.)

However, other factors for the Court's consideration weigh in favor of venue in South Carolina. The most notable are the enforceability of a judgment, local interest in having localized controversies settled at home, appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action, and conflict of laws. Both parties in effect seek a determination about the validity of the non-compete clause at issue and, if

it is enforceable, LaPolla seeks monetary damages against Herring. (*See* Answer, Dkt. No. 9.) At all times relevant to this suit, Herring has been a resident of South Carolina. (Compl. ¶ 7; Answer ¶ 7.) When he entered into the agreement at issue, he resided here. During all of his years of employment with LaPolla, he operated out of South Carolina. (*See* Dkt. No. 32 (showing all business travel originating and ending in Charleston, South Carolina).) To the extent that he has "competed" with LaPolla after leaving its employ, he has done so from South Carolina. If LaPolla wishes to enforce a non-compete clause against Herring, it will, in effect, have to do so in South Carolina.

Herring and LaPolla both seek a determination regarding Herring's actions while operating out of South Carolina, and LaPolla seeks a monetary judgment that, if obtained, will be enforced in South Carolina. South Carolina has a strong interest in having the enforceablility of non-compete agreements signed by South Carolina residents, regarding business conducted out of South Carolina and for monetary judgments to be enforced in South Carolina determined in South Carolina.

Furthermore, South Carolina will not enforce a non-compete clause that violates its public policy, regardless of a forum-selection or choice-of-law provision. *See, e.g., Stonhard, Inc. v. Carolina Flooring Specialists, Inc.*, 366 S.C. 156, 159 (S.C. 2005) ("Terms in a non-compete agreement may be construed according to the law of another state. . . But if the resulting agreement is invalid as a matter of law or contrary to public policy in South Carolina, our courts will not enforce the agreement."); *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 728 (D.S.C. 2007) ("[A] choice-of-law clause in a contract will not be enforced if application of foreign law results in a violation of South Carolina public policy.") If the case is transferred to Texas, it is unlikely

that Texas will apply South Carolina law to determine if the non-compete clause violates South Carolina's public policy. The end result of a transfer could be a judgment that is against South Carolina's public policy and yet is sought to be enforced in South Carolina. This weighs heavily against transfer.

Judicial economy (found in factors 7 and 8) also weighs against transfer. This case has been pending for over a year. LaPolla waited until less than a week before discovery was set to expire (*see* Dkt. No. 19) to move for a transfer. On request of the parties, the Court's Scheduling Order was amended to allow discovery through November 1, 2013, and the case is set for trial on the Court's January 2014 term. (Dkt. No. 38.) This case can be resolved expeditiously in this Court. As Plaintiff points out, the District of South Carolina is less "congested" than the Southern District of Texas. Transferring the case to the Southern District of Texas could result in a delay in the resolution of this case. Plaintiff has self-restricted his business activities while awaiting a determination on the validity of the non-compete clause at issue. (Dkt. No. 40.) Thus, the interest in an "expeditious" resolution is weighty factor under these circumstances.

In sum, none of the § 1404(a) factors favor transfer, except the existence of a forum-selection clause. LaPolla argues that the factors the Court describes above "are negated by the parties' selection of the venue." (Dkt. No. 30 at 17.) Such a statement is not consonant with the Supreme Court's holding in *Stewart*. The Court finds that the weight of the § 1404(a) factors described above "tip the balance" against transfer (*Brock*, 933 F.2d at 1258) "notwithstanding the counterweight of a forum-selection clause." *Stewart*, 287 U.S. at 31.

## IV. Conclusion

For the reasons stated above, the Court DENIES the Defendant's motion to transfer venue (Dkt. No. 30.)

**AND IT IS SO ORDERED.**

Richard M. Gergel
United States District Judge

October 7, 2013
Charleston, South Carolina