IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| TROY HERRING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:12-CV-2705-RMG |
| vs. | ) | |
| | ) | |
| LAPOLLA INDUSTRIES, INC. | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

This matter is before the Court on Plaintiff's Motion for Judgment on the Pleadings regarding Section 5.2 of the Employment Agreement. (Dkt. No. 51.)

## I. BACKGROUND

In April 2012, Plaintiff Troy Herring voluntarily resigned from his position at LaPolla Industries, Inc. ("LaPolla"). (Dkt. No. 1. at ¶ 18; Dkt. No. 9 at ¶ 18.) Subsequently, LaPolla sent Herring a cease and desist letter, putting Herring on notice that he was still bound by the terms and conditions of the Employment Agreement, which contained non-compete and non-disclosure clauses at issue in this case. (Dkt. No. 1 at ¶ 20; Dkt. No. 9 at ¶ 20.) On September 19, 2012, Herring filed this action seeking a declaratory judgment that the Employment Agreement is void as a matter of law. (Dkt. No. 1.) LaPolla then counterclaimed for breach of contract, alleging that Herring breached the non-compete and non-disclosure provisions of the Employment Agreement. (Dkt. No. 9 at ¶¶ 36-42.) In its October 7, 2013 Order, this Court declared the non-compete provision in the Employment Agreement unenforceable as a matter of law and granted judgment

-1-

to Plaintiff on its claims in the Complaint and on Defendant's counterclaims arising out of the non-compete provision. (Dkt. No. 45.) In the instant motion, Plaintiff requests judgment on Defendant's counterclaims arising out of the non-disclosure provision of the Employment Agreement. (Dkt. No. 51.)

## II. LEGAL STANDARD

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions operate to "dispose of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further." *Lewis v. Excel Mech., LLC*, 2:13-CV-281-PMD, 2013 WL 4585873 at * 1 (D.S.C. Aug. 28, 2013) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1368 (3d ed. 2010)). A judgment on the pleadings is only warranted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id. at* * 2 (quoting *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)).

Rule 12(c) motions limit the courts review to the pleadings, *Abell Co. v. Baltimore Typographical Union No. 12*, 338 F.2d 190, 193 (4th Cir. 1964), and "any documents and exhibits attached to and incorporated into the pleadings." *Lewis*, 2013 WL 4585873 at * 1 (citing *Eagle Nation, Inc. v. Mkt. Force, Inc.*, 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001)). Like motions filed under Rule 12(b)(6), motions pursuant to Rule 12(c) call for the pleadings to be construed in the light most favorable to the non-moving party. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir.2002). Accordingly, "[t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening

assertions in the moving party's pleadings as false." *Lewis*, 2013 WL 4585873, at * 2 (quoting

*John S. Clark Co., Inc. v. United Nat'l. Ins. Co.*, 304 F. Supp. 2d 758, 763 (M.D.N.C. 2004)).

## III. STATEMENT OF FACTS

LaPolla applies spray polyurethane foam ("SPF") insulation and equipment. (Dkt. No. 1

at ¶ 2; Dkt. No. 9 at ¶ 2.) On July 1, 2008, LaPolla entered into an Asset Purchase Agreement

with AirTight Corporation ("AirTight"). (Dkt. No. 1 at ¶ 5, Dkt. No. 9 at ¶ 5.) At the time of the

Asset Purchase Agreement, Herring was employed by AirTight as "National Sales Manager."

(Dkt. No. 1 at ¶ 4; Dkt. No. 9 at ¶ 4.) As a part of his continued employment, Herring signed the

Employment Agreement that is at issue with LaPolla. (Dkt. No. 1 at ¶ 6; Dkt. No. 9 at ¶ 6.)

Under the Employment Agreement, Herring was hired in the "position of National Sales

Manager and shall have the duties and responsibilities usually associated with such capacity."

(Dkt. No. 1-1 at ¶ 2.) The Employment Agreement contained confidentiality, non-compete, and

non-solicitation provisions. (*See id.* at ¶¶ 5.1, 5.2.) In pertinent part, the non-disclosure

provision reads as follows:

> The Employee shall not at any time during the term hereof or thereafter divulge, communicate, or use in any way, any Confidential Information (as hereinafter defined) pertaining to the business of the Company. Any Confidential Information or data now or hereafter acquired by the Employee with respect to the business of the Company (which shall include, but not be limited to information concerning the Company's financial condition, prospects, technology, customers, suppliers, sources of leads and methods of doing business) shall be deemed a valuable, special and unique asset of the Company that is received by the Employee in confidence as a fiduciary, and Employee shall remain a fiduciary to the Company with respect to all of such information. For purposes of this Agreement, the term "Confidential Information" includes, but is not limited to, information disclosed to the Employee or known by the Employee as a consequence of or through his employment by the Company (including information conceived, originated, discovered or developed by Employee) prior to or after the date hereof, and not generally known, about the Company or its business. Notwithstanding the foregoing, nothing herein shall be

deemed to restrict the Employee from disclosing Confidential Information to the extent required by law provided that prior to disclosing any such information required by law, Employee shall give prior written notice thereof to Company and provide Company with the opportunity to contest the disclosure. The Employee shall not disclose, without limitation as to time, Confidential Information to any person, firm, Company, association or other entity for any purposes or reason whatsoever, except (i) to authorized representatives of the Company, (ii) during the Employment Period, such information may be disclosed by the Employee as is specifically required by the Company in the courts of performing his duties for the Company, and (iii) to counsel and other advisers of the Company subject to Company's prior approval and provided that such advisers agree to the confidentiality provisions of this Section 5.2.

(*Id.* at ¶ 5.2.)

The Employment Agreement indicates that it was signed on June 30, 2008, became effective July 1, 2008, and was to terminate on June 30, 2011. (*See id.* ¶ 1.) The Employment Agreement also contained a "Governing Law" provision, requiring the agreement to be governed by the laws of Texas. (*Id.* ¶ 8.)

In April 2012, Herring voluntarily resigned from his position as "Product Manager" at LaPolla. (Dkt. No. 1 at 18; Dkt. No. 9 at ¶ 18.) Subsequently, LaPolla sent Herring a cease and desist letter, putting Herring on notice that he was still bound by the terms and conditions of the Employment Agreement. (Dkt. No. 1 at ¶ 20; Dkt. No. 9 at ¶ 20.) This action ensued.

## IV. DISCUSSION

### A. Choice of Law

Choice of law clauses are generally honored in South Carolina. *Team IA, Inc. v. Lucas,* 717 S.E.2d 103, 108 (S.C. App. 2011) (citing cases). However, while a contract may be construed according to the law of another state, "if it is invalid under the law of the State where it is to be performed and contrary to our public policy, we will not enforce it." *Standard Register Co. v. Kerrigan,* 119 S.E.2d 533, 541-42 (S.C. 1961); *see also Nucor Corp. v. Bell,* 482 F. Supp.

2d 714, 728 (D.S.C. 2007) ("[A] choice-of-law clause in a contract will not be enforced if application of foreign law results in a violation of South Carolina public policy."); *accord Lucas*, 717 S.E.2d at 108. Thus, Texas law governs the construction and applicability of the contract (i.e., whether there has been a breach of the contract)[1], but South Carolina law determines whether the contract is valid and consonant with the South Carolina's public policy such that it can be enforced here.

## B. Indefiniteness

Herring argues, among other things, that because the term "Confidential Information" is undefined by the Employment Agreement, he "cannot reasonably know what information he is prohibited from using or revealing and the provision is unenforceable for failure to sufficiently define a material term." (Dkt. No. 51-1 at 9.) To determine whether the contract fails for indefiniteness, the Court applies Texas law, as the question relates to contract formation. *See* Restatement (Second) of Contracts § 33 (1981) ("If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract.").

A contract must "define its essential terms with sufficient detail" to allow a court to determine the legal obligations and liability of the parties. *E.g., Sadeghi v. Gang*, 270 S.W.3d 773, 774 (Tex. App.-Dallas 2008); *Argo Data Resource Corp. v. Shagrithaya*, 380 S.W.3d 249, 276 (Tex. App.-Dallas 2012); *accord T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). If the "essential or material terms" of a contract are not "definite, certain

---

[1] LaPolla cites a number of cases that expound upon Texas common law causes of actions. (Dkt. No. 56 at 6-9.) These cases deal with "certain duties [that] arise *apart from any written contract*." *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 600 (Tex. App. 1995) (emphasis added). Thus, they are not relevant to LaPolla's breach of contract claim.

and clear," then the contract is unenforceable. *Kana v. Plantation Homeowner's Ass'n, Inc.*, 407 S.W.3d 320, 330 (Tex. App.-Corpus Christi 2013). Whether an agreement fails for indefiniteness or constitutes an enforceable contract is a question of law for the court. *E.g., Shagrithaya*, 380 S.W.3d at 274. "While Texas courts favor validating transactions rather than voiding them, a court may not create a contract where none exists and generally may not add, alter, or eliminate essential terms." *Gen. Metal Fabricating Corp. v. Stergiou*, --- S.W.3d ----, 2013 WL 5228494 at *4 (Tex. App. - Houston 2013).

Which contract terms are "essential" or "material" is determined on a case-by-case basis. *E.g., McCalla v. Baker's Campground, Inc.*, --- S.W.3d ----, 2013 WL 4493899 at *2 (Tex. 2013). Essential terms are those terms that the parties "would reasonably regard as vitally important elements of their bargain." *Stergiou*, 2013 WL 5228494 at *4 (quoting *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App. - Houston 2007)).

Identifying what information is protected by a non-disclosure agreement is an essential term of such an agreement. Here, the non-disclosure provision provides that Herring may not "divulge, communicate, or use in any way, any Confidential Information (*as hereinafter defined*) pertaining to the business of the Company." (Dkt. No. 51-2 at 3 (emphasis added).) However, the contract fails to actually define the term "Confidential Information." It only states that the term "includes, *but is not limited to*, information disclosed to the Employee or known by the Employee as a consequence of or through his employment by the Company . . . prior to or after the date hereof, and not generally known, about the Company or its business." (*Id.* (emphasis added).) LaPolla argues that the clause "applies only to information disclosed to the Employee or known by the Employee as a consequence of or through his employment by the Company."

-6-

(Dkt. No. 56 at 11 (emphasis removed).) However, by its explicit terms, the agreement "is not limited" to such information. (Dkt. No. 51-2 at 3.)

Without a definition or any indication of the term's outer limits, the Court is at loss to determine whether information Herring obtained apart from his employment with LaPolla constitutes "Confidential Information."[2] At the heart of this dispute is whether the provision forbids Herring from using his general knowledge, skills, and experience in later employment because the parties agree that, if the provision does so, it would be invalid under South Carolina law as well as Texas law. (*See* Dkt. No. 56 at 9 (citing *Anderson Chem. Corp. v. Green*, 66 S.W.3d 434 (Tex. App. 2001) and *Milliken & Co. v. Morin*, 731 S.E.2d 288 (S.C. 2012)); Dkt. No. 60 at 4.) Presumably, if the term Confidential Information "is not limited to, information disclosed to the Employee or known by the Employee as a consequence of or through his employment by the Company. . .," it includes at least some types of information that Herring knows and learned apart from him employment with LaPolla. Thus, Plaintiff claims that the Agreement broadens the scope of "Confidential Information" to include general knowledge. (Dkt. No. 60 at 4.) LaPolla disagrees and essentially argues that Confidential Information is

---

[2] In the cases cited by Defendant, the non-disclosure provisions at issue provided some definition or limitation on the material covered. *See Corporate Relocation, Inc. v. Martin*, No. 3:06-cv-232, 2006 WL 4101944 at *1 (N.D. Tex. Sept. 12, 2006) ("all non-public information . . . concerning the Company and its affiliates which was acquired by or disclosed to the Executive during the course of his employment with the Company . . ."); *RenewData Corp. v. Strickler*, 2006 WL 504998 at *7 (Tex. App.-Austin Mar. 3, 2006) ("The term 'Proprietary Information' shall mean trade secrets, confidential knowledge, data or any other proprietary information of the Company."); *Milliken & Co. v. Morin*, 731 S.E.2d 288, 290 (S.C. 2012) ("CONFIDENTIAL INFORMATION means all competitively sensitive information of importance to and kept in confidence by Milliken, which becomes known to me through my employment with Milliken.").

defined as if the phrase "but not limited to" were deleted from the contract. (*See* Dkt. No. 56 at 11.)

The problem is further compounded by the fact that the Agreement expressly states that it applies to Confidential Information "as hereinafter defined." (Dkt. No. 51-2 at 3.) Thus, the Court cannot import common usage of the term to resolve its meaning but must instead look to how the term is "hereinafter defined." *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996) ("We give [contractual] terms their plain, ordinary, and generally accepted meaning *unless* the instrument shows that the parties used them in a technical or different sense.") (emphasis added).

Here, the Court cannot determine the extent of Herring's legal obligations and resulting liability under the non-disclosure provision. Specifically, it is uncertain whether the disclosure of information obtained by Herring apart from his employment with LaPolla is covered by the non-disclosure provision.[3] Because it is not "definite, certain and clear" what information is protected by the non-disclosure provision, the provision is unenforceable as a matter of law. *Kana*, 407 S.W.3d at 330.

## C. Tortious Conduct

LaPolla claims that it has also asserted a counterclaim against Herring for "tortious conduct" that survives Plaintiff's Rule 12(c) motion. (Dkt. No. 56 at 18-19.) Specifically, LaPolla claims it has pled a breach of duty of loyalty claim, citing to Paragraph 39 of its Answer.

---

[3] "[T]he degree of certainty required may be affected by the dispute which arises and by the remedy sought. Courts decide the disputes before them, not other hypothetical disputes which might have arisen. It is less likely that a reasonably certain term will be supplied by construction as to a matter which has been the subject of controversy between the parties." Restatement (Second) of Contracts § 33 (1981).

(*Id.*) Paragraph 39 provides:

> Plaintiff has breached the Employment Agreement by:
> a)    Usurping corporate opportunity for personal benefit;
> b)    Competing directly and/or indirectly with Defendant during the period of his non-compete Agreement;
> c)    Soliciting employees and/or luring Defendant's employees to leave Defendant and work for competing employers associated or affiliated with Plaintiff;
> d)    Breaching his duties of loyalty and due care to Defendant; and
> e)    breaching the implied covenant of good faith and fair dealing by his actions including, but not limited to, the actions described in the preceding Paragraphs;

(Dkt. No. 9 at 6-7.) Clearly, this paragraph claims that Plaintiff breached his employment agreement, a breach of contract claim. However, even if the Court considered Paragraph 39(d) to be a separate cause of action for breach of duty of loyalty, the claim would fail. Defendant alleges no facts and simply states in conclusory fashion that Plaintiff breached his duty of loyalty. This fails to state a claim and warrants dismissal under Rule 12(c). *See Demetry v. Lasko Prod., Inc.*, 284 Fed. App'x 14, 15 (4th Cir. 2008) (applying Rule 12(b)(6) standard to a dismissal under Rule 12(c)).

## Conclusion

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 51) is **GRANTED**.

**IT IS ORDERED THAT** the non-disclosure provistion (¶ 5.2) of the Employment Agreement is unenforceable as a matter of law and that Defendant's counterclaims arising out of that provision are **DISMISSED WITH PREJUDICE**.

//

//

//

As all other claims in this action were resolved by the Court's October 7, 2013 Order

(Dkt. No. 45), the Clerk is directed to close this case.

**AND IT IS SO ORDERED.**

Richard M. Gergel
United States District Judge

November 22, 2013
Charleston, South Carolina